Zev B. Zysman, State Bar No. 176805
zev@zysmanlawca.com
LAW OFFICES OF ZEV B. ZYSMAN
A Professional Corporation
15760 Ventura Boulevard, 16th Floor
Encino, CA 91436
Telephone: (818)783-8836
Facsimile: (818)783-9985

Gene J. Stonebarger, State Bar No. 209461
gstonebarger@stonebargerlaw.com
Richard D. Lambert, State Bar No. 251148
rlambert@stonebargerlaw.com
STONEBARGER LAW
A Professional Corporation
75 Iron Point Circle, Ste. 145
Folsom, CA 95630
Telephone: (916) 235-7140
Facsimile: (916) 235-7141

Thomas A. Kearney, State Bar No. 90045
tak@kearneylittlefield.com
Prescott W. Littlefield, State Bar No. 259049
pwl@kearneylittlefield.com
KEARNEY LITTLEFIELD, LLP
3436 N. Verdugo Rd., Ste. 230
Glendale, CA 91208
Telephone: (213) 473-1900
Facsimile: (213) 473-1919

Attorneys for Plaintiff and the Class

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM PRESS, on behalf of himself and all others similarly situated,<br><br>       Plaintiffs<br><br>vs.<br><br>J. CREW, INC. and DOES 1 through 100, inclusive,<br><br>       Defendants. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Violation of the "Unfair" Prong of the UCL<br>2. Violation of the "Fraudulent" Prong of the UCL<br>3. Violation of the "Unlawful" Prong of the UCL<br>4. Violation of the California False Advertising Law, California Business & Professions Code Sections 17500, *et seq*<br>5. Violations of California Consumer Legal Remedies Act |

Plaintiff Adam Press ("Plaintiff") brings this action against J. Crew, Inc. ("Defendant" or "J. Crew") on behalf of himself, and all others similarly situated, upon information and belief, except as to his own actions, the investigation of his counsel, and the facts that are a matter of public record, as follows:

## **INTRODUCTION**

1.     This class action arises out of Defendant's unlawful, unfair, and fraudulent business practice commonly referred to as "false reference pricing." "False reference pricing" is the act of misrepresenting the former, original or regular price of some good that is purportedly offered at a "sale price," a business practice that Defendant engages in to increase sales.  As alleged herein, during at least the past four years, Defendant has misled consumers by advertising the false former, original or regular prices which were fabricated, and corresponding phantom "savings" on women's, men's, and children apparel, shoes, and accessories sold in its J. Crew Factory stores located at outlet malls (the "Factory Stores") and J. Crew Mercantile stores located at convenient retail shopping centers away from typical outlet malls (the "Mercantile Stores") in California.  The products sold at the J. Crew Factory Stores and Mercantile Stores are essentially the same.

2.     California law prohibits the discounting of retail merchandise from its original price for more than ninety (90) days.  *See* California Business & Professions Code §17501.  Federal regulations also mandate that a retailer offer only genuine discounts from regular retail prices; not false discounts from inflated original prices. *See* 16 C.F.R. §233.1.

3.     Some retailers, such as J. Crew, employ false reference pricing because it misleads consumers into believing that they are "getting a good deal," thereby increasing sales.   The United States Court of Appeals for the Ninth Circuit succinctly explained: "Most consumers have, at some point, purchased merchandise

that was marketed as being 'on sale' because the proffered discount seemed too good to pass up.  Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price.  Because such practices are misleading – and effective – the California Legislature has prohibited them."  *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

4.     The intentional use of false and fraudulent reference pricing tactics is increasingly deceiving consumers in the market.  To illustrate, on January 30, 2014, four members of Congress demanded a Federal Trade Commission ("FTC") investigation of misleading marketing practices by outlet stores across the United States.  The four Members of Congress described a pricing scheme similar to the one implemented at J. Crew Factory Stores and Mercantile Stores and stated: "[h]owever, we are concerned that outlet store consumers are being misled into believing they are purchasing products originally intended for sale at the regular retail store.  Many outlets may also be engaged in deceptive reference pricing. It is a common practice at outlet stores to advertise a retail price alongside the outlet store price – even on made-for-outlet merchandise that does not sell at regular retail locations.  Since the item was never sold in the regular retail store or at the retail price, the retail price is impossible to substantiate.  We believe this practice may be a violation of the FTC's Guides Against Deceptive Pricing (16 CFR 233)." *See* www.whitehouse.senate.gov/news/release/sens-and-rep-to-ftc-outlet-stores-may-be-misleading-consumers.

5.     During the Class Period (defined below), Defendant continuously advertised false price discounts for merchandise sold throughout its J. Crew Factory Stores and Mercantile Stores in California (collectively "J. Crew Factory and

CLASS ACTION COMPLAINT

Mercantile Products).   Defendant would offer substantial discounts off a false "Reference Price" listed on every price tag.   As used throughout the Complaint, Reference Price shall mean the ticketed price listed on the item's price tag.   As addressed in detail below, Plaintiff and reasonable consumers typically understand the Reference Price to be the former, original, or regular price of the item on which it appears.

6.   Specifically, Defendant represented – on the price tags of J. Crew Factory and Mercantile Products – Reference Prices that were overstated and did not represent a bona fide price at which the J. Crew Factory and Mercantile Products were previously sold.  Nor was the advertised Reference Price a prevailing market retail price within three months immediately preceding the publication of the advertised former prices, as required by California law.

7.   Defendant conveys its deceptive pricing scheme through in store signage offering steep discounts from the Reference Price listed on the products' price tags in the J. Crew Factory Stores and Mercantile Stores. The Reference Price listed and advertised on Defendant's price tags are fake reference prices; utilized only to perpetuate Defendant's fake-discount scheme. The pricing scheme is prominently displayed on virtually all items throughout the store.   There are typically large placard signs on top of or alongside each rack of clothing or accessories, advertising a "discounted % off," or a "discounted whole-price" reduction for the item.   For example, a product may have a price tag with a "Reference Price" of $59.50 and the related signage advertising "Take 40% Off Ticketed Price," which is substantially less than the former regular price listed on the price tag.  *See* Exhibit "A."   Another example is a product having a price tag with a "Reference Price" of $54.50 and the related signage advertising a "sale price" of $24.99.  *See* Exhibit "B." However, the "Reference Price" listed on the price tags have never existed and/or were not the prevailing market retail prices for such

4

1  products within the three months next immediately preceding the publication of the

2  price tags, as required by California law.  They are fictional creations intentionally

3  designed to enable Defendant's phantom markdowns.  Furthermore, upon check-out,

4  Defendant provides California consumers, including Plaintiff, with sales receipts

5  continuing the misrepresentations regarding false price reductions.  For example, the

6  stated *discount* from the false former "Reference Price" is listed for each item

7  purchased.

8      8.    J. Crew knows consumers are bargain-hunters, and knows consumers

9  are lured by the prospect of a bargain at "Outlet" stores.   "Outlet" stores are

10  commonly understood by the public to be selling the same merchandise that the

11  manufacturer typically sells at its regular non-outlet retail stores, but at a discount.

12  According to Business Insider, "[t]he common assumption about outlet stores is that

13  you're getting the same goods that are in a regular store without the big price tag."

14  *See*      http://www.businessinsider.com/outlet-stores-arent-a-good-deal-2014-5.

15  However, outlet stores typically sell different merchandise than their retail

16  counterparts.

17      9.    In this case, Defendant offers for sale J. Crew Factory and Mercantile

18  Products designed and manufactured *exclusively* for sale in its Factory Stores and

19  Mercantile Stores, which means that such items were never sold – or even intended

20  to be sold – at the Reference Price advertised on the price tags.  These J. Crew

21  Factory and Mercantile Products were never offered for sale at the company-

22  operated mainline retail stores in California.   Further exacerbating consumers'

23  perception of deep discounts is the fact that Defendant sells higher quality products

24  at its mainline retail stores.  Defendant knows that consumers expect to receive a

25  discount when shopping at its Factory Stores and Mercantile Stores, and

26  accordingly, preys on consumer expectations by artificially marking up the

27  Reference Price of its products and then offering discounts off of the artificially

28

CLASS ACTION COMPLAINT

inflated Reference Price to induce consumers to purchase its products. The truth is that the J. Crew Factory and Mercantile Products are not discounted off former, regular, or original prices. Rather, the Reference Price exists to provide an illusory discount when compared to the actual sales price offered. This tactic is called "reference pricing." The Reference Price listed on the products' price tags were and are the prices chosen by Defendant to enable it to engage in its phantom markdown scheme.

10.   Defendant conveys its deceptive pricing scheme to consumers through promotional materials, in-store advertising displays, and print advertisements which are uniform. Upon information and belief, Defendant's false price advertising scheme has been rampant throughout California as part of a massive, years-long, pervasive campaign and has been consistent across all of Defendant's exclusive branded apparel and accessories sold in its J. Crew Factory Stores and Mercantile Stores. Indeed, most, if not all products sold in the Factory Stores and Mercantile Stores are subject to the same fraudulent pricing scheme complained of herein.

11.   Upon information and belief, thousands of Defendant's consumers in California, including Plaintiff, were victims of Defendant's deceptive, misleading, and unlawful false pricing scheme. This deception will continue if Defendant is not enjoined from continuing its pricing scheme.

12.   Defendant knows or should reasonably know that its comparative (reference) price advertising is false, deceptive, misleading and unlawful under California law.

13.   Defendant fraudulently concealed from, and intentionally failed to disclose to, Plaintiff and other members of the Class, the fact that Reference Prices displayed on the price tags for the J. Crew Factory and Mercantile Products do not reflect a former, regular, or original price.

CLASS ACTION COMPLAINT

14.     At all relevant times, Defendant has been under a duty to Plaintiff and the Class to disclose the truth about its Reference Prices and false discounts.

15.     The facts which Defendant misrepresented or failed to disclose are material facts that a reasonable person would have considered material, *i.e.*, facts which would contribute to a reasonable person's decision to purchase Defendant's merchandise. Defendant's false representations of Reference Prices and false representations of purported savings, discounts and bargains are objectively material to the reasonable consumer, including Plaintiff, and therefore reliance upon such representations may be presumed as a matter of law.

16.     Plaintiff relied upon Defendant's false representations of Reference Prices and discounts when purchasing merchandise from a J. Crew Factory Store in California.  Plaintiff would not have made such purchase, but for Defendant's false representations and fraudulent omissions of the Reference Price of the items he purchased, as compared with the supposedly discounted price at which J. Crew Factory Stores offered the items for sale.

17.     Plaintiff reasonably believed the truth of the represented prices attached to the price tags, or in advertisements or on signage regarding, products purchased at the J. Crew Factory Store, which expressly represented that Plaintiff was getting a substantial percentage discount or whole-price reduction off the original price. Plaintiff reasonably understood the Reference Price representation to indicate a true former price.  Indeed, one cannot truly "save" off anything other than a true former price on the identical product.  Otherwise, one is not "saving," one is simply buying a different product than the one that bears a higher price.

18.     Plaintiff and the Class reasonably and justifiably acted and relied on the substantial price differences that Defendant advertised, and made purchases believing that they were receiving a substantial discount on an item of greater value than it actually was.  Plaintiff and the Class reasonably understood the Reference

Price on the price tags to be a valid representation of a true former price on the identical product. However, the price on the price tags did not represent a true former price or the prevailing market retail price in the preceding three months for the products. Plaintiff, like other Class members, was lured in, relied on, and was damaged by these pricing schemes that Defendant carried out.

19.     Defendant intentionally concealed and failed to disclose material facts regarding the truth about its misrepresentations and false former price advertising scheme for the purpose of inducing Plaintiff and Class members to purchase merchandise in its J. Crew Factory Stores and Mercantile Stores.

20.     Through its false and deceptive marketing, advertising and pricing scheme, Defendant has violated, and continues to violate California law prohibiting advertising goods for sale as discounted from purported former prices which are false, and prohibiting misleading statements about the existence and amount of price reductions.    Specifically, Defendant has violated, and continues to violate, California's Business & Professions Code §§ 17200, *et seq*. (the "UCL"), California's Business & Professions Code §§ 17500, *et seq*. (the "FAL"), and the California Consumers' Legal Remedies Act, California Civil Code §§1750, *et seq*. (the "CLRA"), and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and false advertisements.  15 U.S.C. § 52(a).

21.     Plaintiff brings this action on behalf of himself and other similarly situated consumers who have purchased one or more items at J. Crew Factory Stores and/or Mercantile Stores in California that were deceptively represented as discounted from false former prices in order to halt the dissemination of this false, misleading, and deceptive pricing scheme, to correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who have purchased such products.  Plaintiff seeks restitution and other appropriate

CLASS ACTION COMPLAINT

1  equitable remedies, including an injunction under the UCL and FAL; and an
2  injunction under the CLRA.

3
4  ## JURISDICTION AND VENUE

5      22.    This Court has original jurisdiction of this action pursuant to the Class
6  Action Fairness Act, 28 U.S.C. § 1332 (d)(2) and (6). The matter in controversy,
7  exclusive of interest and costs, exceeds the sum or value of $5,000,000 and at least
8  one of the members of the proposed Class have a different citizenship from
9  Defendant.

10      23.    The Central District of California has personal jurisdiction over the
11  Defendant named herein because Defendant does sufficient business in the State of
12  California, has sufficient minimum contacts with California and/or otherwise
13  intentionally avails itself of the markets within California through its ownership and
14  operation of J. Crew Factory Stores and Mercantile Stores in California where
15  Defendant employed, and continues to employ, the sale tactics detailed herein to
16  render the exercise of jurisdiction by California courts and the application of
17  California law to the claims of the Plaintiff permissible under traditional notions of
18  fair play and substantial justice.

19      24.    Venue is proper in the Central District of California pursuant to 28
20  U.S.C. § 1391 because Defendant transacts substantial business in this District and a
21  substantial part of the events or omissions giving rise to Plaintiff's claims arose
22  here.

23  ## THE PARTIES

24      A.    <u>Plaintiff</u>

25      25.    Plaintiff Adam Press ("Press") is a citizen and resident of Los Angeles
26  County, California.  It is alleged that on January 7, 2017, in reliance on Defendant's
27  false and deceptive advertising, marketing and pricing schemes, Plaintiff purchased

28

J. Crew Factory Products from the J. Crew Factory Store located at the Camarillo Premium Outlets in Camarillo, California, and was damaged thereby.

B.   <u>Defendant</u>

26.   Defendant J. Crew, Inc. ("J. Crew") is a Delaware corporation which is licensed to do, and is doing, business throughout the United States, with its principal place of business located at 770 Broadway, New York, New York 10003.   As of January 28, 2017,   Defendant operates 256 J. Crew mainline retail stores, 136 Factory Stores, and 39 Mercantile Stores throughout the United States, and advertises, markets, distributes, and/or sells women's, men's and children's apparel, shoes, and accessories.

27.   The only stores that are the subject of this Complaint are the J. Crew Factory Stores and Mercantile Stores in California.   The Complaint expressly excludes any J. Crew Factory and Mercantile Products sold at Factory Stores and Mercantile Stores that advertised a Reference Price that was a prevailing market retail price within the three months preceding.

C.   <u>Doe Defendants</u>

28.   The true names and capacities of Defendants sued in this Complaint as Does 1 through 100, inclusive, are currently unknown to Plaintiff, and therefore Plaintiff sues such Defendants by such fictitious names.   Plaintiff will amend this Complaint to reflect the true names and capacities of the Defendants designated herein as Does 1 through 100, when they have been ascertained, along with the appropriate charging allegations, as may be necessary.

29.   Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein.   Plaintiff will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging allegations when the same have

1 | been ascertained.  Each reference in this Complaint to "J. Crew" or "Defendant" is
2 | also a reference to all Defendants sued as Does 1 through 100.

3 |       D.     <u>Agency/Aiding And Abetting</u>

4 |       30.    Plaintiff is informed and believes, and on that basis alleges, that at all
5 | times herein mentioned, Defendants, and each of them, were an agent or joint
6 | venturer of each of the other Defendants, and in doing the acts alleged herein, were
7 | acting within the course and scope of such agency.  Each Defendant had actual
8 | and/or constructive knowledge of the acts of each of the other Defendants, and
9 | ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each
10 | co-defendant, and/or retained the benefits of said wrongful acts.

11 |       31.    Plaintiff is further informed and believes, and on that basis alleges, that
12 | Defendants, and each of them, aided and abetted, encouraged and rendered
13 | substantial assistance to the other Defendants in breaching their obligations to
14 | Plaintiff and the Class, as alleged herein.  In taking action, as particularized herein,
15 | to aid and abet and substantially assist the commissions of these wrongful acts and
16 | other wrongdoings complained of, each of the Defendants acted with an awareness
17 | of his/her/its primary wrongdoing and realized that his/her/its conduct would
18 | substantially assist the accomplishment of the wrongful conduct, wrongful goals,
19 | and wrongdoing.

20 |       32.    Whenever reference is made in this Complaint to any act of "J. Crew"
21 | or "Defendant," such shall be deemed to mean that officers, directors, agents,
22 | employees, or representatives of the Defendant named in this lawsuit committed or
23 | authorized such acts, or failed and omitted to adequately supervise or properly
24 | control or direct their employees while engaged in the management, direction,
25 | operation or control of the affairs of the Defendant and did so while acting within
26 | the scope of their employment or agency.
27 | ///
28 |

## CONDUCT GIVING RISE TO THE VIOLATIONS OF THE LAW

A.    Plaintiff's Purchases

33.    On January 7, 2017, Plaintiff went shopping at the J. Crew Factory Store which is located at the Camarillo Premium Outlets in Camarillo, California to purchase clothing for himself.  He observed a large exterior window display that advertised "40% - 60% Off Everything."

34.    Upon entering the store, Plaintiff observed prominent signage on top of or alongside each rack of clothing or accessories, advertising a "discounted % off," or a "discounted whole-price" reduction for each item offered for sale.  Believing he was able to pay significantly less than the Reference Price for the identical products normally charged in the retail marketplace, Plaintiff was induced to purchase three different items, all of which were offered at prices significantly lower than their stated "Reference Prices." Plaintiff purchased the items after relying on Defendant's false discounts and false Reference Prices for such products.

35.    Specifically, relying upon Defendant's misrepresentations and false and deceptive advertising, Plaintiff was induced to purchase the following three items: a long-sleeve slim washed shirt in mini-gingham, Style B8636, SKU number 099104205416 bearing a Reference Price of "$59.50" on the price tag, and two slim washed V-neck tee-shirts, Style 40993, SKU number 099102917037 bearing a Reference Price of "$19.50" on each price tag.  *See* true and correct copies of price tags attached to clothing which Plaintiff purchased on January 7, 2017, attached hereto as Exhibit "C."

36.    Plaintiff observed signage adjacent to and above these items that advertised percentage discounts and whole-price discounts, clearly indicating that the items were being sold at significant discounts off their Reference Prices. The long-sleeve shirt contained a price tag representing it to have a Reference Price of "$59.50," and the signage which represented that the shirt was on sale for "Now

CLASS ACTION COMPLAINT

Only $24.99."   The tee-shirts contained price tags representing them to have a Reference Price of "$19.50," and the signage which represented that the tee shirts were on sale for "40% Off Ticketed Price," leaving a discount and savings of $7.80, and purchase price at $11.70.

37.   Relying on Defendant's misrepresentations and false and deceptive advertising and believing that he was receiving a significant discount from the Reference Price listed on the price tags by purchasing the merchandise, Plaintiff decided to purchase the items and proceeded to the cash register where he did in fact purchase the items.  Plaintiff also believed he was purchasing merchandise that was of the same like, kind and quality of that sold in the regular company-operated retail stores. These purported Reference Prices and corresponding price reductions and savings were false and deceptive, as the prevailing market retail price for the three shirts during the three months immediately prior to Plaintiff's purchase of such items were never at the represented former Reference Prices.  Plaintiff would not have purchased the shirts in the absence of Defendant's misrepresentations.  Instead, Defendant continuously offered the subject shirts, like the vast majority of products offered for sale at J. Crew Factory Stores and Mercantile Stores in California for sale at discounted prices.  As a result, Plaintiff has been personally victimized by and suffered economic injury as a direct result of Defendant's unlawful, unfair and fraudulent conduct.

38.   Furthermore, upon check-out on January 7, 2017, Defendant provided Plaintiff with a sales receipt containing the same misrepresentations regarding false price reductions off the Reference Prices on the three shirts.  The sales receipt clearly sets forth the false Reference Price for each item purchased, and that Plaintiff was receiving the benefit of a discount off the Reference Price for each item purchased and listed the discount or savings amount for each item, and then the sales price amount after the purported discount.  Additionally, below the total

1    amount purchased at the bottom of the sales receipt, Defendant misrepresented to

2    Plaintiff the total amount purportedly saved on the entire purchase transaction with

3    the words "*You have saved $50.11.*" *See* true and correct copy of Plaintiff's sales

4    receipt, dated January 7, 2017, attached hereto as Exhibit "D."

5         B.    Defendant Engages In Deceptive Advertising

6         39.    Subsequent to Plaintiff's purchase, an investigation conducted on

7    behalf of Plaintiff confirmed that the "Reference Price" listed on the price tags for

8    Plaintiff's purchases at the J. Crew Factory Store were never the prevailing market

9    retail price in the preceding 90 days before Plaintiff's purchase.  Additionally, the

10   investigation revealed that Defendant's deceptive advertising practices were

11   systematic and pervasive at J. Crew Factory Stores and J. Crew Mercantile Stores as

12   items remain continuously discounted from the Reference Price listed on the price

13   tags or they are not offered for sale at their Reference Price for any substantial

14   period of time, and in most cases, not at all, and in compliance with California law.

15   Indeed, in most instances, *new* items appear at the J. Crew Factory Stores and J.

16   Crew Mercantile Stores that are immediately discounted, rendering the Reference

17   Prices completely meaningless, false, and misleading. The difference between the

18   discounted sale prices and the Reference Price is a false savings percentage or

19   whole-price reduction used to lure consumers into purchasing products they believe

20   are significantly discounted.  In addition, the clothing and other items sold at J.

21   Crew Factory Stores and J. Crew Mercantile Stores are designed and manufactured

22   for, and sold *exclusively* by, those stores, which means that such items were never

23   sold – or even intended to be sold – at the Reference Price advertised on the price

24   tags.  The J. Crew Factory and Mercantile Products were *never* offered for sale at

25   the J. Crew mainline retail stores in California.

26   ///

27   ///

28

14

40.     By failing to price J. Crew Factory and Mercantile Products at their actual regular price for a substantial period of time, Defendant artificially inflated the market price or value of the clothing and other items it sells, including the shirts purchased by Plaintiff.   Moreover, by failing to price its J. Crew Factory and Mercantile Products, including the shirts purchased by Plaintiff at their regular price for a substantial period of time, and in compliance with California law, Defendant interfered with market forces, driving the selling price of its products higher than they would be if Defendant had complied with the law.

41.     Defendant's false discounting practice, as described herein, has the effect of setting an artificially high market value for its "on sale" merchandise. Customers, like Plaintiff, purchase merchandise from Defendant believing they are receiving a substantial discount on their purchases, when in fact they are not. They are instead purchasing an item they would not otherwise buy and paying a higher price than they would otherwise pay were the products subject to fair market competition and pricing.

42.     Plaintiff's and Class members' reliance upon Defendant's false price comparison advertising was not only reasonable, but entirely intended by Defendant. In fact, empirical marketing studies demonstrate that false reference pricing actually creates an impression of higher value and an incentive for retailers to engage in this false and fraudulent behavior:

> [c]omparative price advertising offers consumers a basis for comparing the relative value of the product offering by suggesting a monetary worth of the product and any potential savings . . . .
> [A] comparative price advertisement can be construed as deceptive if it makes any representation, . . . . or involves any practice that may materially mislead a reasonable consumer.

*Comparative Price Advertising: Informative or Deceptive*?, Dhruv Grewal and Larry D. Compeau, *Journal of Public Policy & Marketing*, Vol. 11, No. 1, at 52 (Spring 1992). Furthermore:

> [b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product. . . . Thus, if the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value.

*Id*. at 55, 56.

43.    A retailer's "reference price," the stated price presented alongside the retailer's "on sale" price, provides consumers a reference point with which to evaluate the prospective purchase.  The reference price is often described with terms such as "Regular Price," 'Original Price," and/or "Former Price."

44.    A retailer's reference price impacts the consumer's behavior in the marketplace.  As the reference price increases, so does the consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.

45.    When the reference price is bona fide and truthful, it helps consumers make informed purchasing decisions.  In contrast, consumers are harmed when merchants advertise their products alongside falsely-inflated former prices, *i.e*., "false reference prices," as consumers are provided a false sense of value.  In this context, the reference price is no longer informative but deceptive because consumers are deprived of a full and fair opportunity to accurately evaluate the specific sales offer in its relevant market.  As the Ninth Circuit recognizes, "[m]isinformation about a product's "normal" price is . . . significant to many

1  consumers in the same way as a false product label would be." *See Hinojos v.*
2  *Kohl's Inc*. 718 F.3d at 1106.

3      46.    Moreover, the hidden nature of false discounting makes it effective.
4  Consumers, like Plaintiff, unaware of the practices at issue, instead complete their
5  purchases believing that they "got a good deal." Retailers, like Defendant, make
6  falsely-discounted sales without suspicion because consumers do not have access to
7  the comprehensive historical pricing information necessary to reveal the deception.

8      47.    The full extent of Defendant's false and deceptive pricing scheme can
9  only be revealed through a full examination of records exclusively in the possession
10  of Defendant.

11      48.    Despite the Reference Price scheme used at J. Crew Factory Stores and
12  J. Crew Mercantile Stores, Plaintiff would purchase Defendant's products in the
13  future from J. Crew Factory Stores or J. Crew Mercantile Stores, if price tags
14  accurately reflect "former" prices and discounts. Currently, however, Plaintiff and
15  other consumers have no realistic way to know which – if any – of Defendant's
16  price tags and sale prices are not false or deceptive. If the Court were to issue an
17  injunction ordering Defendant to comply with California's comparative price
18  advertising laws, and prohibiting Defendant's use of the deceptive practices
19  discussed herein, Plaintiff would be able to make informed purchase decisions for
20  Defendant's products at J. Crew Factory Stores and J. Crew Mercantile Stores.

21
22  **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

23      49.    Plaintiff brings this action as a class action on behalf of himself, and all
24  others similarly situated pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal
25  Rules of Civil Procedure.  The proposed Class that Plaintiff seeks to represent is
26  defined as follows:
27  ///
28

All persons who, while in the State of California, during the four (4) year period preceding the filing of this Complaint through the date of final judgment in this action (the "Class Period"), purchased one or more J. Crew Factory and/or Mercantile Products at a purported discount off of the stated Reference Price on the price tag at any J. Crew Factory Stores and/or J. Crew Mercantile Stores in the State of California, and who have not received a refund or credit for their purchase(s).

50.     Excluded from the Class are Defendant; its corporate parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; any of its officers, directors, employees, or agents; the legal representatives, successors or assigns of any such excluded persons or entities; and the judicial officers to whom this matter is assigned as well as their court staff.   Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

51.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff estimates that the Class consists of thousands of members. Moreover, Plaintiff alleges that the precise number of Class members, their identities, and their locations can be ascertained though appropriate discovery and records of Defendant and its agents.   Defendant keeps extensive computerized records of its customers through, *inter alia*, customer loyalty programs, co-branded credit cards and general marketing programs. Defendant has one or more databases through which a significant majority of Class members may be identified and ascertained, and it maintains contact information, including email and home mailing

CLASS ACTION COMPLAINT

1   addresses, through which notice of this action could be disseminated to potential

2   Class members in accordance with due process requirements.

3        52.    There are numerous questions of law and fact common to the Class

4   which predominate over any questions affecting only individual members of the

5   Class.

6        53.    Among the questions of law and fact common to the Class are, *inter*

7   *alia*:

8        a.    Whether, during the Class Period, Defendant used false price

9   representations and falsely advertised price discounts on J. Crew Factory and

10  Mercantile Products it sold in J. Crew Factory Stores and J. Crew Mercantile Stores

11  in California;

12       b.    Whether Defendant intended its Reference Price to be synonymous

13  with the item's former, regular, or original price;

14       c.    Whether, during the Class Period, the Reference Prices advertised by

15  Defendant were the prevailing market prices for the associated J. Crew Factory and

16  Mercantile Products sold  by Defendant during the three month period preceding the

17  dissemination and/or publication of the advertised Reference Prices;

18       d.    Whether Defendant's use of false or deceptive price advertising

19  constituted false advertising under California law;

20       e.    Whether Defendant engaged in unfair, unlawful and/or fraudulent

21  business practices under California law;

22       f.    Whether Defendant misrepresented and/or failed to disclose material

23  facts about its product pricing and discounts;

24       g.    Whether Defendant has made false or misleading statements of fact

25  concerning the reasons for, existence of, or amounts of price reductions;

26       h.    Whether Defendant's conduct, as alleged herein, was intentional and

27  knowing;

28

i.      Whether Class members are entitled to damages and/or restitution; and, if so, what is the amount of revenues and/or profits Defendant received and/or was lost by Class members as a result of the conduct alleged herein;

j.      Whether an injunction is necessary to prevent Defendant from continuing to use false, misleading or illegal price comparisons; and

k.      Whether Plaintiff and Class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest and costs of suit.

54.     Plaintiff's claims are typical of the claims of the members of the Class and, like all members of the Class, purchased goods from a J. Crew Factory Store and/or J. Crew Mercantile Store that conveyed a false Reference Price and a fictitious discount. Plaintiff and the Class he seeks to represent have all been deceived (or were likely to be deceived) by Defendant's false former price advertising scheme, as alleged herein.  Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class. Accordingly, Plaintiff has no interests antagonistic to the interests of any other member of the Class.

55.     Plaintiff is an adequate representative of the Class because he is a member of the Class and his interests do not conflict with the interests of the Class members he seeks to represent. Plaintiff will fairly and adequately represent and protect the interest of the Class because he is not antagonistic to the Class.  Plaintiff has retained counsel who are competent and experienced in the prosecution of consumer fraud and class action litigation.

56.     The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class for the wrongs alleged because:

a.      The individual amounts of damages involved, while not insubstantial,

1    are such that individual actions or other individual remedies are impracticable and

2    litigating individual actions would be too costly;

3         b.    If each Class member was required to file an individual lawsuit, the

4    Defendant would necessarily gain an unconscionable advantage since it would be

5    able to exploit and overwhelm the limited resources of each individual Class

6    member with vastly superior financial and legal resources;

7         c.    The costs of individual suits could unreasonably consume the amounts

8    that would be recovered;

9         d.    Proof of a common factual pattern that Plaintiff experienced is

10   representative of that experienced by the Class and will establish the right of each

11   member of the Class to recover on the cause of action alleged; and

12        e.    Individual actions would create a risk of inconsistent results and would

13   be unnecessary and duplicative of this litigation.

14        57.   Plaintiff and Class members have all similarly suffered irreparable

15   harm and damages as a result of Defendant's unlawful and wrongful conduct.  This

16   action will provide substantial benefits to Plaintiff, the Class and the public because,

17   absent this action, Plaintiff and Class members will continue to suffer losses,

18   thereby allowing Defendant's violations of law to proceed without remedy, and

19   allowing Defendant to retain proceeds of its ill-gotten gains.

20        58.   All Class members, including Plaintiff, were exposed to one or more of

21   Defendant's misrepresentations or omissions of material fact claiming that

22   advertised Reference Prices were in existence.  Due to the scope and extent of

23   Defendant's consistent false price advertising scheme, disseminated in a massive,

24   years-long campaign to California consumers via in-store display advertising, print

25   advertising, and the like, it can be reasonably inferred that such misrepresentations

26   or omissions of material fact were uniformly made to all members of the Class. In

27   addition, it can be reasonably presumed that all Class members, including Plaintiff,

28

affirmatively acted in response to the representations contained in Defendant's false advertising scheme when purchasing J. Crew Factory and/or Mercantile Products at J. Crew Factory Stores and/or J. Crew Mercantile Stores in California.

59.   Defendant has acted or refused to act on grounds generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.  As such, the systematic policies and procedures of Defendant make final injunctive relief or declaratory relief with respect to the Class as a whole appropriate.

## FIRST CAUSE OF ACTION

### Violation Of The "Unfair" Prong Of The UCL
(By Plaintiff and the Class Against Defendant)

60.   Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

61.   The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

62.   The UCL imposes strict liability.   Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices – only that such practices occurred.

63.   A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

64.   Defendant has violated and continues to violate the "unfair" prong of the UCL by representing a false Reference Price and corresponding price discount for its J. Crew Factory and Mercantile Products sold at J. Crew Factory Stores and J. Crew Mercantile Stores in California.  As a result, the inflated Reference Price was

1  nothing more than a false, misleading and deceptive price included to create the
2  illusion of a discount.

3        65.    Defendant's acts and practices are unfair because they caused Plaintiff,
4  and reasonable consumers like him, to falsely believe that J. Crew Factory Stores
5  and J. Crew Mercantile Stores are offering value, discounts or bargains from the
6  prevailing market worth of the products sold that did not, in fact, exist.  Defendant
7  intended and intends for Plaintiff and Class members to equate the Reference Price
8  with a higher original price.  As a result, purchasers, including Plaintiff, reasonably
9  perceived that they were receiving products that regularly sold in the retail
10  marketplace at substantially higher prices (and are, therefore, worth more) than what
11  they paid. This perception has induced reasonable purchasers, including Plaintiff, to
12  buy J. Crew Factory and/or Mercantile Products, which they otherwise would not
13  have purchased.

14        66.    The gravity of the harm to members of the Class resulting from these
15  unfair acts and practices outweighed any conceivable reasons, justifications and/or
16  motives of Defendant for engaging in such deceptive acts and practices.  By
17  committing the acts and practices alleged above, Defendant engaged in unfair
18  business practices within the meaning of California Business & Professions Code §§
19  17200, *et seq*.

20        67.    As a direct and proximate result of Defendant's acts and practices,
21  Plaintiff and Class members have suffered injury in fact and have lost money or
22  property as a result of purchasing Defendant's products.

23        68.    Through its unfair acts and practices, Defendant has improperly
24  obtained money from Plaintiff and the Class.  As such, Plaintiff requests that this
25  Court cause Defendant to restore this money to Plaintiff and all Class members, and
26  to enjoin Defendant from continuing to violate the UCL as discussed herein and/or
27  from violating the UCL in the future.  Otherwise, Plaintiff and the Class may be

28

CLASS ACTION COMPLAINT

1   irreparably harmed and/or denied an effective and complete remedy if such an order

2   is not granted.

### SECOND CAUSE OF ACTION

Violation Of The "Fraudulent" Prong Of The UCL
(By Plaintiff and the Class Against Defendant)

69.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

70.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

71.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

72.     The price tags on the J. Crew Factory and Mercantile Products and advertising materials containing false Reference Prices were "fraudulent" within the meaning of the UCL because they deceived Plaintiff, and were likely to deceive members of the Class, into believing that Defendant was offering value, discounts or bargains at J. Crew Factory Stores and J. Crew Mercantile Stores from the prevailing market value or worth of the products sold that did not, in fact, exist.  As a result, purchasers, including Plaintiff, reasonably perceived that they were receiving products that regularly sold in the retail marketplace at substantially higher prices (and were, therefore, worth more) than what they paid. This perception induced reasonable purchasers, including Plaintiff, to buy such products from Defendant, which they otherwise would not have purchased.

73.     Defendant's acts and practices as described herein have deceived Plaintiff and were highly likely to deceive members of the consuming public. Specifically, in deciding to purchase J. Crew Factory Products from the J. Crew Factory Store, Plaintiff relied on Defendant's misleading and deceptive Reference

24

Prices and discounted prices.  Each of these factors played a substantial role in Plaintiff's decision to purchase those products, and Plaintiff would not have purchased those items in the absence of Defendant's misrepresentations. Accordingly, Plaintiff suffered monetary loss as a direct result of Defendant's practices described herein.

74.   As a direct and proximate result of Defendant's acts and practices, Plaintiff and Class members have suffered injury in fact and have lost money or property as a result of purchasing Defendant's products.

75.   As a result of the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

76.   Through its unfair acts and practices, Defendant has improperly obtained money from Plaintiff and the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all Class members, and to enjoin Defendant from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## **THIRD CAUSE OF ACTION**

Violations Of The "Unlawful" Prong Of The UCL
(By Plaintiff and the Class Against Defendant)

77.   Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

CLASS ACTION COMPLAINT

78.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

79.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

80.     The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and specifically prohibits false advertisements. 15 U.S.C. § 52(a)). The FTC has established Guidelines that describe false former pricing schemes, similar to Defendant's in all material respects, as deceptive practices that would violate the FTCA:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial price, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably

1    substantial period of time, in the recent, regular course of her business,

2    honestly and in good faith – and, of course, not for the purpose of

3    establishing a fictitious higher price on which a deceptive comparison

4    might be based.

5    16 C.F.R. § 233.1.

6        81.    California statutory and regulatory law also expressly prohibits false

7    former pricing schemes. Cal. Bus. & Prof. Code § 17501, entitled "*Value*

8    *determinations; Former price advertisements*," states:

9        For the purpose of this article the worth or value of any thing advertised

10    is the prevailing market price, wholesale if the offer is at wholesale,

11    retail if the offer is at retail, at the time of publication of such

12    advertisement in the locality wherein the advertisement is published.

13

14    *No price shall be advertised as a former price of any advertised thing,*

15    *unless the alleged former price was the prevailing market price as*

16    *above defined within three months next immediately preceding the*

17    *publication of the advertisement* or unless the date when the alleged

18    former price did prevail is clearly, exactly and conspicuously stated in

19    the advertisement. [Emphasis added.]

20        82.    As detailed in Plaintiff's Fifth Cause of Action below, Cal. Civ. Code

21    § 1770, subsection (a)(9), prohibits a business from "[a]dvertising goods or services

22    with intent not to sell them as advertised," and subsection (a)(13) prohibits a

23    business from "[m]aking false or misleading statements of fact concerning reasons

24    for, existence of, or amounts of price reductions."

25        83.    Defendant also violated and continues to violate Business &

26    Professions Code § 17501, and Civil Code § 1770, sections (a)(9) and (a)(13) by

27    advertising false discounts from purported former prices that were, in fact, not the

28

CLASS ACTION COMPLAINT

prevailing market prices within three months next preceding the publication and dissemination of advertisements containing the false former prices.

84.     Defendant's use of and reference to a materially false Reference Price, and purported percentage discount or whole-price reduction in connection with its marketing and advertisements concerning the J. Crew Factory and Mercantile Products sold at J. Crew Factory Stores and J. Crew Mercantile Stores violated and continues to violate the FTCA, 15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a), as well as FTC Guidelines published at Title 16, Code of Federal Regulations, Section 233.

85.     As a direct and proximate result of Defendant's acts and practices, Plaintiff and Class members have suffered injury in fact and have lost money or property as a result of purchasing Defendant's products.

86.     As a result of the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

87.     Through its unfair acts and practices, Defendant has improperly obtained money from Plaintiff and the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all Class members, and to enjoin Defendant from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## FOURTH CAUSE OF ACTION

Violation Of California False Advertising Law
California Business & Professions Code Sections 17500, *et. seq.*
(By Plaintiff and the Class Against Defendant)

88.     Plaintiff re-alleges and incorporates by reference the allegations

1  contained in the preceding paragraphs as though fully set forth herein.

2      89.    The California False Advertising Law prohibits unfair, deceptive,

3  untrue, or misleading advertising, including, but not limited to, false statements as to

4  worth, value and former price.

5      90.    Cal. Bus. & Prof. Code § 17500 provides that:

6      [i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of

7      . . . personal property . . . to induce the public to enter into any

8      obligation relating thereto, to make or disseminate or cause to be made

9      or disseminated . . . from this state before the public in any state, in any

10     newspaper or other publication, or any advertising device, or by public

11     outcry or proclamation, or in any other manner or means whatever,

12     including over the Internet, any statement . . . which is ***untrue*** or

13     ***misleading***, and which is known, or which by the exercise of

14     reasonable care should be known, to be untrue or misleading . . .

15     [Emphasis added.].

16     91.    The "intent" required by Cal. Bus. & Prof. Code § 17500 is the intent

17  to dispose of property, and not the intent to mislead the public in the disposition of

18  such property.

19     92.    Similarly, Cal. Bus. & Prof. Code § 17501 provides, "no price shall be

20  advertised as a former price of any advertised thing, unless the alleged former price

21  was the prevailing market price . . . within three months next immediately preceding

22  the publication of the advertisement or unless the date when the alleged former price

23  did prevail is clearly, exactly, and conspicuously stated in the advertisement."

24     93.    Defendant's routine practice of including a false Reference Price on

25  price tags on J. Crew Factory and Mercantile Products sold at J. Crew Factory

26  Stores and J. Crew Mercantile Stores, which were never the true prevailing prices of

27  those products was an unfair, deceptive and misleading advertising practice.  This

28

deceptive marketing practice gave consumers the false impression that the J. Crew Factory and Mercantile Products sold at J. Crew Factory Stores and J. Crew Mercantile Stores were regularly sold in the retail marketplace at substantially higher prices than they actually were. Therefore, leading to the false impression that the merchandise was worth more than it actually was.  In fact, J. Crew Factory and Mercantile Products that were made exclusively for sale in the J. Crew Factory Stores and J. Crew Mercantile Stores were never sold at the Reference Price under any circumstances.

94.     Defendant misled consumers by making untrue and misleading statements and failing to disclose what is required as stated in the Code, as alleged above.

95.     As a direct and proximate result of Defendant's acts and practices, Plaintiff and Class members have suffered injury in fact and have lost money or property as a result of purchasing Defendant's products.

96.     Through its unfair acts and practices, Defendant has improperly obtained money from Plaintiff and the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all Class members, and to enjoin Defendant from continuing to violate the False Advertising Law as discussed herein in the future. Otherwise, Plaintiff and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## **FIFTH CAUSE OF ACTION**

For Violation Of The Consumer Legal Remedies Act
California Civil Code Sections 1750, *et. seq.*
(By Plaintiffs and the Class Against Defendant)

97.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

98.    This cause of action is brought pursuant to the CLRA.

99.    Plaintiff and each member of the proposed Class are "consumers" within the meaning of California Civil Code § 1761(d).

100.   Defendant's sale of J. Crew Factory and Mercantile Products at J. Crew Factory Stores and J. Crew Mercantile Stores to Plaintiff and the Class were "transactions" within the meaning of California Civil Code § 1761(e). The J. Crew Factory and Mercantile Products purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code § 1761(a).

101.   As described herein, Defendant violated, and continues to violate, the CLRA by falsely representing the nature, existence and amount of price discounts by fabricating an inflated Reference Price and including that Reference Price on the price tag for J. Crew Factory and Mercantile Products.  Such a pricing scheme is in violation of Cal. Civ. Code § 1770, subsection (a)(9) ("[a]dvertising goods or services with intent not to sell them as advertised") and subsection (a)(13) ("[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions").

102.   Plaintiff relied on Defendant's false representations in deciding to purchase merchandise from Defendant.  Plaintiff would not have purchased such merchandise absent Defendant's unlawful conduct.  As a result of these acts and practices, Plaintiff suffered damage in that he spent money at the J. Crew Factory Store that he would not have otherwise spent absent Defendant's unlawful and misleading acts and practices.

103.   Pursuant to Section 1782(a) of the CLRA, on June 9, 2017, Plaintiff's Counsel, on behalf of Plaintiff Press, served Defendant by United States certified mail, return receipt requested, with notice of Defendant's particular violations of the CLRA and requested that Defendant identify victims, notify victims and remedy its illegal conduct within 30 days.

104.   Plaintiff has requested that Defendant timely respond to the CLRA demand notice and presently seeks only injunctive relief pursuant to the CLRA.  If Defendant fails to fully, completely and timely comply with Plaintiff's demand letter, Plaintiff will amend this Complaint to seek actual and punitive damages, as appropriate, under the CLRA.   Under California Civil Code §1782(d), after the commencement of an action for injunctive relief, and after compliance with the provisions of Section 1782(a), Plaintiff may amend his Complaint without leave of court to include a request for damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, prays for relief and judgment against Defendant as follows:

1.   For an order certifying this matter as a class action and designating Plaintiff as the Class Representative and Plaintiff's Counsel as Class Counsel;

2.   For an order awarding restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of its unlawful, unfair, and fraudulent business practices described herein;

3.   For appropriate injunctive relief as permitted by law or equity;

4.   For an order directing Defendant to engage in a corrective advertising campaign;

5.   For an award of attorneys' fees as authorized by statute including, but not limited to, the provisions of California Civil Code § 1780(e), California Code of Civil Procedure § 1021.5, as authorized under the "common fund" doctrine, and as authorized by the "substantial benefit" doctrine;

6.   For costs of the suit incurred herein;

7.   For prejudgment interest at the legal rate; and

8.   For such other and further relief as the Court may deem proper.

CLASS ACTION COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2

3

        Plaintiff hereby demands a trial by jury for Plaintiff and the Class as to all issues so triable.

4

5   Dated: June 9, 2017                    LAW OFFICES OF ZEV B. ZYSMAN, APC

6                                          STONEBARGER LAW, APC

7                                          KEARNEY LITTLEFIELD, LLP

8

9

10                                         /s/ Richard D. Lambert

11                                         RICHARD D. LAMBERT
                                           Attorneys for Plaintiff Adam Press and
12                                         The Class

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT